**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| CHASE CORBIN; and HEATHER CORBIN, | |
| Plaintiffs, | CIVIL ACTION NO.: 6:26-cv-1 |
| v. | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

## **O R D E R**

The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Remand. (Doc. 12.)  The Court **REMANDS** this case to the State Court of Toombs County, Georgia, but **DENIES** Plaintiffs' request for costs and expenses under 28 U.S.C. § 1447(c).

## **BACKGROUND**

Plaintiffs filed this lawsuit on November 26, 2025, in the State Court of Toombs County, Georgia, seeking recovery under an insurance policy issued by Defendant that covers Plaintiffs' real property. (Doc. 1-1.)  Plaintiffs alleged that their property was damaged by a fire, resulting in $37,870.86 in damages.  (Id. at p. 2.)  They claimed that, despite the loss being covered by the insurance policy, Defendant refused to pay their claim in bad faith.  (Id. at pp. 2–4.)  Through Count I of the Complaint, Plaintiffs asserted a claim under O.C.G.A. § 33-4-6 ("the bad faith statute") for bad faith refusal to pay and, through Count II, they brought a claim for breach of contract based on Defendant's failure to indemnify them for the covered loss.  (Id. at pp. 2–5.) Plaintiffs asserted that in addition to the amount of loss, the bad faith statute entitles them to

recover their reasonable attorneys' fees and a penalty of not more than fifty percent of the loss. (Id. at p. 4.)  In their prayer for relief, Plaintiffs sought "compensatory damages of not less than $37,870.86," as well as punitive damages, attorneys' fees, and costs.  (Id. at p. 5.)

Plaintiffs attached to their Complaint a letter that their attorney sent to Defendant on August 11, 2025.  (Id. at pp. 7–8.)  In that letter, Plaintiffs' counsel alleged that Defendant had refused to pay Plaintiffs' claim in violation of the bad faith statute.  (Id.)  Counsel sated that Plaintiffs' damages and expenses included "$33,087.22 for repairs" and "$4,783.64 for contents." (Id. at p. 8.)  The letter stated that "[s]hould this matter proceed to litigation, we will request the trier of fact to compensate Plaintiff[s] $37,870.86 for the loss, plus reasonable attorney fees and extra damages for your negligence and bad faith claim handling practices per [the bad faith statute]."  (Id.)

Defendant removed the case to this Court on January 5, 2026, purportedly based on diversity jurisdiction.  (Doc. 1.)  As to citizenship, Defendant explained that Plaintiffs are Georgia citizens, while Defendant is incorporated in Ohio and has its principal place of business there.  (Id. at p. 3.)  As for the amount in controversy, Defendant stated that, "[d]uring the Insurance Claim's adjustment, Plaintiffs submitted a Sworn Statement in Partial Proof of Loss, claiming that their total loss and damages were $54,767.89."  (Id. at p. 4.)  Defendant attached a photo of what appears to be a notarized Proof of Loss form filled out by Heather Corbin ("the Proof of Loss").  (See doc. 1-3.)  The Proof of Loss does not detail the losses incurred but states that amount claimed under the policy was $54,767.89.  (Id.)  In its Notice of Removal, Defendant reasoned, "[w]hen combining the total loss of $54,767.89 with an additional fifty percent (50%) of the total loss amounting to $27,383.95 [which Plaintiffs claimed under the bad faith statute], the total amount

in controversy is $82,151.84, exceeding the $75,000 minimum threshold for diversity jurisdiction." (Doc. 1, p. 4.) Defendant asserted that the amount in controversy was further increased by Plaintiffs' request for attorney's fees. (Id.)

Plaintiffs moved to remand. (Doc. 12.) They argued "the amount in controversy is $37,870.86, which is the amount to repair the plaintiffs' property after a fire loss." (Id. at p. 2.) They also contended that interest, fees, and costs that they may recover are too speculative to be included in the Court's calculation of the amount in controversy. (Id. at pp. 2–3.) Along with remand, Plaintiffs sought an award of costs and expenses. (Id. at p. 3.)

Defendant responded in opposition to Plaintiffs' Motion. (Doc. 15.) Defendant emphasized that Plaintiffs' Complaint sought "'compensatory damage of ***not less than*** $37,870.86.'" (Id. at p. 2 (quoting Doc. 1-1, p. 5) (emphasis supplied by Defendant).) Defendant relied heavily on Plaintiffs' sworn statement that their amount of loss was $54,767.89. (Id. at pp. 2, 4–5.) Defendant contended that combining that amount, the 50% liability claimed under the bad faith statute, and "nominal reasonable attorneys' fees of $10,000," the amount in controversy "totals $92,151.84." (Id. at p. 2.)

Plaintiffs replied to Defendant's Response. (Doc. 23.) They argued that Defendant's reliance on the figure of $54,767.89 as the loss amount was erroneous because the amount of $37,870.86 contained in the Complaint "is based on the most accurate estimate for the cost of repairs at the time of filing." (Doc. 23, p. 2.) In support, Plaintiffs attached an affidavit from Plaintiff Heather Corbin. (Doc. 23-1.) She explained that after she signed her original claim she was "provided with more accurate estimates to repair the damage to my property and the contents therein." (Id.) Mrs. Corbin states that, "[a]s of the date of this affidavit, the cost to repair the

damage to my property and replace the damaged contents is $37,870.86." (Id.) Plaintiffs argue that even under Defendant's approach, when this lower amount is combined with a fifty-percent recovery under the bad faith statute ($18,935.43), and $10,000 in attorneys' fees, the amount in controversy only totals $66,806.29. (Doc. 23, p. 2.) Plaintiffs also argue that their bad faith damages are too speculative to be included in the calculation and that the Court can only include attorneys' fees calculated up to the time of removal. (Id. at pp. 3–4.)

## DISCUSSION

Plaintiffs have not asserted a claim for relief under federal law. (See doc. 1-1.) Thus, as the parties concede, the only basis for jurisdiction in this Court would be diversity jurisdiction.

> Under 28 U.S.C. § 1332, a federal court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the suit is between "citizens of different states." . . . Diversity jurisdiction is determined at the time the complaint was filed. Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957); Holston Inv., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1070 (11th Cir. 2012).

Alberto v. Progressive Ins. Co., No. 2:11-cv-203, 2013 WL 750290, at *2 (S.D. Ga. Feb. 27, 2013). The parties agree that diversity of citizenship exists but they contest whether the amount in controversy exceeds $75,000.

In the removal context, "[w]here the plaintiff has not plead a specific amount of damages . . . the defendant is required to show . . . by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); see also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). In such a case, "removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Pretka, 608 F.3d at 754 (quoting Williams v. Best Buy Co., 269 F.3d 1316, 1319

4

(11th Cir. 2001) (alterations in Pretka)); see also Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000).  If it is "not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."  Pretka, 608 F.3d at 754 (quoting Williams, 269 F.3d at 1319); see also Sierminski, 216 F.3d at 949.

Although a defendant need not "banish all uncertainty about" the amount in controversy, the Court requires a removing defendant to make "specific factual allegations establishing jurisdiction" that can be supported "with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations."  Pretka, 608 F.3d at 754; see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 913 (11th Cir. 2014) ("[T]he pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.").  To determine whether the amount in controversy threshold is met, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010).  In other words, a removing defendant must be able to point to specific facts to show that the amount in controversy exceeds $75,000 and cannot leave the existence of jurisdiction to be "divined by looking to the stars."  Lowery v. Alabama Power Co., 483 F.3d 1184, 1215 (11th Cir. 2007)

Additionally, "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."  Pretka, 608 F.3d at 751.  Even "a post-removal stipulation [as to the amount in controversy] does not normally divest a federal court of jurisdiction."  Millhouse v. Brannen, No. 7:11-cv-15 (HL), 2011 WL 672337, at *1 (M.D. Ga. Feb. 16, 2011); see also Royal Canin U.S. A., Inc. v. Wullschleger, 604 U.S. 22, 38, n.8 (2025) (in holding that post removal amendments can destroy federal question jurisdiction noting that post-

removal amendments that only change amount in controversy do not destroy diversity jurisdiction).

**I.     Whether Defendant Has Shown that the Amount in Controversy at the Time of Removal Exceeded $75,000**

To assess whether Plaintiffs' claims placed the amount in controversy above the jurisdictional threshold, the Court turns first to the Complaint. The Complaint asserted two counts, Count I for recovery under the bad faith statute and Count II for breach of contract. Because the amount in controversy under Count I essentially hinges on the amount of loss at issue in Count II, the Court first assesses Count II.

Looking at the face of the Complaint, Count II places $37,870.86 in controversy. The Amended Complaint specifically stated that Plaintiffs' covered loss totaled $37,870.86. (Doc. 1-1, p. 2.) To be sure, Plaintiffs' prayer for relief sought compensatory damages of "not less than" that figure. (Id. at p. 5.) But $37,870.86 was the amount that Plaintiffs claimed as the total cost to repair their property and replace their contents. Plaintiffs alleged no other out of pocket losses or other injuries that they could recover under Count II.[1] Additionally, Plaintiffs' counsel's letter attached to the Complaint claimed that Defendant owed Plaintiffs $37,870.86 under the Policy. (Doc. 1-1.)

---

[1] Plaintiffs' prayer for relief also included punitive damages. (Doc. 1-1, p. 5.) "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." Holley Equip. Co. v. Credit All. Corp., 821 F.2d 1531, 1535 (11th Cir. 1987). Under Georgia law, "[p]unitive damages are not recoverable in actions for breach of contract, even if the breaching party did so in bad faith." Walia v. Walia, 847 S.E.2d 8, 12 (Ga. Ct. App. 2020). Thus, the only "punitive" damages Plaintiffs could recover would be those allowed by the bad faith statute under Count I. Defendant seems to concede this point as it has not argued that this request should figure into the Court's calculations. The Court agrees and will not consider "punitive" damages outside the relief available under the bad faith statute when assessing whether the jurisdictional amount is met.

Because Count II facially placed $37,870.86 in controversy, Count I must have placed at least $37,129.15 in controversy for the $75,000 jurisdictional amount to be met.  It did not.  The Complaint accurately quotes the bad faith statute's provision that an insurer may be liable "'in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.'"  (Doc. 1-1 (quoting O.C.G.A. § 33-4-6).)  Georgia courts have repeatedly held that the plain language of the bad faith statute provides a penalty of the greater of $5,000 or fifty percent of the loss the insured refused to pay.  Atl. Title Ins. Co. v. Aegis Funding Corp., 651 S.E.2d 507, 510 (Ga. Ct. App. 2007).  Thus, based on the Complaint's statement that the loss amount was $37,870.86, the highest penalty the Complaint sought under Count I was fifty percent of that figure (which would be $18,935.43).

Count I also requested attorneys' fees and costs which can be recovered under the bad faith statute.  (Doc. 1-1, p. 5.)  Attorneys' fees may be considered when assessing the amount in controversy if they are allowed by statute or contract.  Federated Mut. Ins. v. McKinnon Motors, LLC, 329 F.3d 805, 808, n.4 (11th Cir. 2003) (citing Graham v. Henegar, 640 F.2d. 732, 736 (5th Cir. 1981)); see also Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.").  Yet the Court will only consider those attorneys' fees that Plaintiffs incurred up to the time of removal.[2]  See DX Print, LLC v. Nat'l Ctr. for Life & Liberty, Inc., No. 6:21-CV-13, 2021 WL 5107726, at *3–4 (S.D. Ga. Nov. 3, 2021).  The

---

[2]  Even if the Court could include attorneys' fees and costs that Plaintiffs would likely incur throughout the action in its calculation, those fees and costs would not amount to $18,193.72, the amount necessary to cross the jurisdictional threshold.

Complaint says nothing about what attorneys' fees Plaintiffs had incurred.  The most Defendant has offered is an unexplained estimate of $10,000 of "nominal" attorneys' fees in its calculations.  The Court, applying its judicial experience and common sense, cannot accept that Plaintiffs' fees totaled $10,000 at the time of removal.  But even accepting this figure, adding $10,000 to the penalty of $18,935.43 only brings Count I's amount in controversy to $28,935.43.  When combined with the $37,870.86 in controversy through Count II, the total amount in controversy would only be $66,806.29, well below the $75,000.01 jurisdictional threshold.  Thus, the face of the Complaint does not satisfy the jurisdictional amount.

Turning to the Notice of Removal, the only additional information Defendant's pleading provides is the Proof of Loss, in which Mrs. Corbin stated that the total loss was $54,767.89.  (Doc. 1-3.)  If this statement of the loss amount had been made at or around the time of removal, it would be relevant to the amount in controversy.  But Mrs. Corbin filled out this form before she and Mr. Corbin filed suit.  The Court must judge the amount in controversy at the time of removal.  Pretka, 608 F.3d at 751.  By that time, Plaintiffs had made clear, through their attorney's demand letter and their Complaint, that their claimed loss was $37,870.86.

Additionally, Mrs. Corbin explained in her affidavit that after she completed her Proof of Loss, she received more accurate estimates, and the total loss she seeks under the policy is $37,870.86, not $54,767.89.[3]  (Doc. 23-1.)  While this statement does not specifically state that Plaintiffs are seeking no more than $75,000, in essence, it limits their recovery to below that threshold.  This statement "looms large in the jurisdictional inquiry, and merits considerable

---

[3]  It would have been more helpful if Mrs. Corbin had stated that she received these estimates before the suit was filed and that this was the amount of loss she sought at the time of removal rather than when she executed her affidavit.  All the same, the Court can reach those conclusions from the fact that the amount in her affidavit matches the amount in Plaintiffs' presuit demand letter and their Complaint.

deference." Land Clearing Co., LLC v. Navistar, Inc., No. CIV.A. 11-0645-WS-M, 2012 WL 206171, at *4 (S.D. Ala. Jan. 24, 2012); see also Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 808 (11th Cir. 2003) (where plaintiff's lawyers, who "are officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose," represent that plaintiff does not seek and will not accept damages greater than the jurisdictional minimum, "we give great deference to such representations and presume them to be true"); Millhouse, 2011 WL 672337, at *1; Wallace v. Ky. Fried Chicken, No. 08-248-KD-B, 2008 WL 4531773, *6 n. 13 (S.D. Ala. Oct. 9, 2008) ("In weighing motions to remand, courts in the Eleventh Circuit credit representations of counsel that their clients will neither seek nor accept recovery exceeding the jurisdictional amount."); Watson v. Nuvell Fin. Servs., LLC, No. 2:07-cv-639-WKW, 2008 WL 110923, *3 & n. 2 (M.D. Ala. Jan. 9, 2008) (remanding for want of proof of amount in controversy, where plaintiff's attorney clearly stated that plaintiff would not accept an award of greater than $75,000).

In sum, Defendant has failed to show that the amount in controversy at the time of removal exceeded $75,000. Thus, the Court lacks subject matter jurisdiction and must remand this case.

II.     **Whether the Court will Award Costs and Expenses Under 28 U.S.C. § 1447(c)**

28 U.S.C. § 1447(c) authorizes a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The United States Supreme Court has held that courts may award attorneys' fees under this provision when "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). Plaintiffs argue that Defendant lacked an objective basis to seek removal because it relied on the Proof of Loss when removing "but that too [was]

below the requisite threshold and shows actual knowledge on Defendant's behalf." (Doc. 12, p. 3.)  While the Proof of Loss does not satisfy the jurisdictional requirement, Defendant did not lack an objectively reasonable basis for arguing that it did.  Moreover, while the amount of loss listed in that document did not satisfy the jurisdictional threshold, if Plaintiffs also sought that amount plus fifty percent of that amount under the bad faith statute, the total amount in controversy *would* exceed $75,000.  Accordingly, the Court **DENIES** Plaintiffs' request for costs and expenses under Section 1447(c).

## CONCLUSION

The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Remand. (Doc. 12.)  The Court **REMANDS** this case but **DENIES** Plaintiffs' request for an award of costs and expenses under 28 U.S.C. § 1447(c).  The Court **DIRECTS** the Clerk of Court to **CLOSE** this case after remanding it to the State Court of Toombs County, Georgia.

**SO ORDERED**, this 24th day of April, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA